All right, our second case for this morning is Thaddeus Jones v. Michelle Markowitz Qualkinbush, and we will begin when you're ready. I see Good morning. I suppose we should welcome you back for this case, since it has reached this Court before in different incarnations. Yes, it has. Thank you. Good morning. May it please the Court, I'm Kerri-Lynn Craftifer on behalf of the Appellants. This case presents the exact situation that this Court contemplated could occur in the Georges v. Carney case, and it demonstrates the mischief that can be wreaked upon the public when the rule of three is in the wrong hands. It gives governmental actors actually a recipe for how to quash citizen-initiated referenda that they disagree with or if they have competing speech, and it also demonstrates to them how they can remove political opposition from local government election. The defendants in this instance were seeking to do two things. One, they wanted to block a citizen-initiated petition with an excess of 2,100 petition signers who wanted to place a term limits question on the ballot for the November 8th election. The other thing they sought to do was specifically target the one declared candidate who was seeking to run against the incumbent mayor. To what extent was there a problem here with the wording in this term limit referendum? I thought that at least the district judge was of the view that if the people seeking, the signers, the petition plaintiffs, if you will, had made it clear that the referendum request was not until the next available slot. I mean, it may well have even made it onto the February ballot, if not the April one, because it would be, because the whole point of that rollover, whatever you want to call it, is to avoid this clogging up the ballot process that the city council seems to have been engaged in. Well, it is true that the election code contemplates that when citizens are circulating a petition, they don't have to specify a particular election. And if they don't specify it, if they are therefore blocked for the first election they try to get in, they can go in the second one. Then they roll to the next one. But these people, as I understand this record, didn't do that. So why we should make a grand statement about the referendum process if there was a readily available way to avoid this tactic is troubling to me. It's only, the holdover clause is only effective if petitioners are not seeking relief related to a specific election. But what's he seeking now? I mean, all of these elections are over at this point. Well, there's two different classifications of plaintiffs. We have the petition plaintiffs and we have Mr. Jones. And they're both seeking damages as well as non-monetary relief. The reason we are before you today is that the district court held that the plaintiffs were not entitled to damages because the city was not a party to any he overlooked the definition there. But what are their damages? I can't even figure out what their damages would be. Well, first of all, it's the deprivation of their First Amendment rights. And it would be whatever value placed upon that that a jury would find. Well, there's no monetary injury. Well, but it's a compensable injury, the fact that they were denied ballot access to which they were entitled. But how do you put a dollar sign on that? I certainly can and any number of forms of equitable relief, but a dollar sign that would be an issue for a trier effect if the case went before. Don't there need to be some standards, though, even in tort cases, you know, their actual damages and their pain and suffering damages. And juries will take into account the degree of the harm and so on just because it's, you know, non-monetary at some level. I mean, what's your point of reference? The fact that governmental actors used an existing law in an unconstitutional manner and deprived, first of all, the petition signatures signers of effective relief, but also barred Mr. Jones from exercising his First Amendment rights here should be a compensable injury that they are entitled to compensation for. What is the compensable injury, though? The backward-looking compensable injury? Well, it would be, I mean, the ability to have access to the ballot and to run for office. So for Mr. Jones, would it be the salary he didn't get because he didn't become mayor because he wasn't able to run? It could be, but that would predict that not only did he win, but that he ran. You'd have to multiply at times, you know, the probability that he would win, I suppose. Right, exactly. But that underscores why we really should have been entitled to equitable relief at some stage of this process, because if we were entitled to be on the ballot, even during the pendency of the consideration of the underlying claims, it would have been much easier to effectuate ultimate relief in this. There would have been no harm to put the questions on the ballot and to allow Mr. Jones to be on the ballot and to allow the election to occur, because even later, if that was ruled to be an improper action, the court could have suppressed the vote results. It's very hard to unring the bell afterwards. So all along, the reason why I went before the district court four different times on emergency motions within three and a half months, in addition to coming up on an emergency interlocutory appeal before this court, was to try to have a situation where the voters would be able to decide on these issues while the court contemplated the merits, and then fashion... Right, but all of those injunctive claims are now moot. So the elections are long gone, and I don't know what remedy it is that you're seeking. You're trying to keep this damages claim alive, but without articulating any kind of a theory of a compensable injury. Well, with respect to... At best, it's a nominal damages case. Perhaps, but it still would be compensable. With respect, though, to non-monetary... Well, but are nominal damages enough to keep a case alive from mootness? Well, I don't believe that's the only thing keeping this case alive. I believe that, yes, it's true it might be moot as far as putting the question on the November election ballot or the February election ballot. Last year, I think so. That's a reasonable concession. Maybe it would be helpful if you had a more reasonable response by the plaintiffs. So you have your petition plaintiffs, but you also have Mr. Jones, because I'm not sure the answers are the same for each. Right. Well, first of all, the non-equitable relief or the non-monetary relief we're seeking on behalf of the petition plaintiffs is still a ruling that the rule of three is unconstitutional when applied in this fashion. So why... I mean, and I guess I... Maybe I'm going to have to go back to this other question. I don't see why the rule of three in the abstract is a problem if, as Illinois law appears to do, it provides a way of defeating a city council that is... that seems bound and determined to fill up the ballot with three questions, whether advisory or binding. That's what this city council did for a couple of ballots worth, right? Right, exactly. But you didn't ask for the rollover. You focused on the November election. No, because that, frankly, would have been ineffectual in this instance, because we were seeking to accomplish something prior to the April election. The city demonstrated that it was very easy for them to call a special meeting within two days of them learning that we were circulating our petition and have three city council meetings and put three referenda questions on the ballot. If we would have had the holdover clause, it would not have saved us in this instance. But let me give you some dates. You can tell me why this is bad reasoning. You submit your referendum petition on August the 8th of 2016, as I glean from the record. It's not until August 25th, 2016, that the city council puts three questions on the February 27 ballot. We know it's already put... it's already used up the November ballot, but the February ballot would have been in time for the April election, or at least looks to me like it would have been in time for the April election. So it seems that you had a couple of weeks, you know, three weeks or so, in which to get in front of the city council in the queue, because if you had asked for either the November 2016 election or the next available election, your referendum would have been first for the February 27 ballot. But not necessarily. Not when you have a governmental actor that can then, just on 48 hours, call another... But it didn't, though. It didn't until August 25th. So, I mean, maybe I'm not understanding how this works, but they put three questions on the November 2016 ballot on June 23rd. Okay, so November 16 is full. You submit your referendum petition August the 8th. There are three weeks that go by, nearly, before they put questions on the February 27 ballot. I don't know why, under Illinois law, your August 8th submission isn't first in line for the next available ballot, February 27, if you had asked for the next available ballot. Well, at that point, we had no indication that our filing on August 8th was going to be treated as subjected to the Rule of Three. They didn't give us the mandatory notice, and I know this court considered that issue before and really did not find that argument compelling, but I believe we had a right to rely on the fact that the city was required to give a notice to us under the statute that they were not going to certify our question under the Rule of Three, and we relied on them performing that. When they didn't perform that function, we had reason to believe that perhaps they were going to repeal one of their original three. I mean, we had ability to rely on the fact that they didn't give us notice that they were taking us off the ballot. We didn't find out that we were off the ballot until September 6th. Right, now I understand that, by which time it's too late, because February 27 is full. Well, yeah, exactly, exactly, but that's the problem with the Rule of Three, because in this case, it is true that they, within two days, came and called meetings to put three questions on the ballot, but they quite easily could have put 30 questions on the ballot, clogging the ballot for the next 10 elections, and we believe that's what would have happened here. It's pretty clear, viewing the fact pattern as a whole, that they were out to accomplish their objective here, and that's what they did. Well, let me switch over, since you've mentioned that, to Mr. Jones, because he, I mean, these seem to me, again, to be somewhat different issues. He's raising both a regular and a class of one equal protection challenge, and maybe you can just answer quickly. Class of one equal protection challenges are hard to bring, although they do exist. Can you show the necessary lack of rationality? I mean, that's a bare minimum. There may be an anonymous requirement also, but at least there has to be no rational basis. Yes, I can. When you look at the face of the pleadings, which is really the issue before the court, did Jones adequately plead an equal protection class of one claim? There were two required elements that even the different factions of this court that have arisen under the Del Mar Cell case, either way, under either way, we've satisfied that. Here, what happened is we are seeing that the collective action of placing three referenda on the ballot targeting Mr. Jones over two elections was not rational. What the district court said and what the defendant argued was that, first of all, they made no argument demonstrating why it was rational to put three questions on the ballot. All they said was that the one question, which is arguably a term limit question, could arguably be rational. Well, first of all, we think they didn't satisfy the fact that we were claiming the governmental action was actually the putting on of the three referenda. Second, they presented no arguments whatsoever on why the other two referenda they submitted were rational. Their response brief is wholly devoid of any argument with respect to that. And third, even if you go, even if you buy the argument that it was sufficient for them to raise rationality related to one of the four complained upon acts that the plaintiffs brought, it's silly. It's silly to think that their term limit was construed as a objective was to prevent long-entrenched politicians from serving in office again. What they did is they said, if you've served for aldermen for four consecutive terms, you can't run for mayor. And if you've served as mayor for four consecutive terms, you cannot run for mayor. What they did not say was if you've held any office in the city of Calumet City for four terms, not consecutive, then you can not run again for mayor. That would be a legitimate term office. They cherry-picked what they wanted just to target Jones. And that could have some ludicrous results. You could have someone who was an incumbent mayor for three terms, and then ran for alderman for three terms, and then ran for mayor again for three terms, all successfully. And because those terms were not consecutive, they can run for mayor again. So their referendum didn't, the only person that it barred from running from office was Mr. Jones. But they didn't do it the way that I'm suggesting would have been a legitimate exercise of that, because then in fact it would have barred the incumbent mayor, which is what they did not want to do. Okay. Thank you. Thank you. Mr. Murphy. May it please the court. I think your honor, because this is a tale of two referenda, it might be easier in terms of my presentation to kind of segregate and respond to the court's questions regarding timing. Much of the timing has already been laid out in opinion one. To understand why this constitutional challenge to a statute should be rejected by this court in this instance, we need to kind of follow through on what your honor had started to talk about in terms of the statutory structure and holdover clause. In page two of our brief, you will see the question of the petition plaintiffs in its entirety. And the underlined aspect of the question is the key to the disposition of the petition plaintiff's case, the referendum that didn't make it on the ballot. Three sections of the election code interplay. Section 28.1 has the general requirement of referenda and what we've called the rule of three. Section 28-2 says that if your petition is election specific, it may not be presented at any other election. Section 28-5, which is what opinion one referred to as the holdover clause or failsafe, provides in essence that if you are a group of petitioners and you are not election specific in your petition, meaning either at the November 2nd election or the following election, you have what I'm going to refer to as first lien. So what prevents the whatever it passes, an ordinance or an order with 30 ballot referenda. So for the next 10 elections, the ballot's going to be full and there's no referendum process available for the citizens. Section 28-5 of the election code provides that if you are a petitioner and remember referenda get on the ballot two ways, corporate resolution by the government or petition. Section 28-5 says that if you are a petitioner and you are blocked out from election one because of the rule of three, even if the next 10 elections are clogged by questions, you have first lien at the following election. So you read the statute simply to override after that first election the sequence that the city council has created. That is correct. Now if we can return to the sequence of events here, the petitioners began to circulate this election specific petition on middle of June. I think it was June 18. June 23, city council acts. Opinion one holds that Ben Jones had notice as of that date because it was an action of a public body. Of course, Jones was at the meeting. So insofar as the law is concerned, the petition plaintiffs had notice as of June 23 that they faced being blocked at the November election. They had two options. Well it's basically they were blocked. The council puts three questions on the November 2016 ballot. That is correct. So they had two choices. At the front end, they could have chosen to cast their petition to protect themselves against that possibility. Secondly, essentially revise their petition. They've been collecting signatures for a week or so with the November 2016 date, but they would have to start over again with an open-ended petition. Yeah, with a relaxed petition, we'll call it, with a nonspecific petition, and they had six weeks. So to the extent there's a constitutional issue that could have been presented, this is not the case. First, because as a matter of law, the statute prevents the shenanigans that you just mentioned. And second, they could have, either at the beginning or once they knew there was a block for November, they could have cured the problem and gotten on that petition on the February ballot. Please recall the sequence of the election. November 16 was the presidential, of course. In a number of municipalities, such as Calumet City, there is a plaintiffs, petition plaintiffs, either done it differently at the front end or cured the problem during that six weeks interval. Their petition would have been on the February 2017 primary ballot. When you say it's a democratic primary, is this February 28, 2017 primary election open to all the... Some communities, a lot of suburbs, don't have primaries. Calumet City does because they run Democrat, Republican, that sort of thing. You have the right under the election code not to declare that I'm a Democrat or Republican and simply vote on the referendum. So it's a wide open election to the entire electorate. Had they done that and had the voters approved, the incumbent mayor would have been knocked out. We would have had, in effect, two different... A stricter term limit. It would have been a stricter term limit as to her. Now, can I ask you one final question about the petition plaintiffs? It seems that the district court misread the complaint to the extent of not realizing that the petition plaintiffs were suing the city itself, not just the individuals. So what are we to do with that? It looks like they are suing the city for city policies to the extent it's a Monell kind of claim. What's wrong with that? Well, if that is correct, we conceded that point that there was a misread. I think it was because everything was fast track and in addition there was a prayer for punitive damages against everybody, so I think we all focused on the legislators. If the court finds that the statute as applied in this case is unconstitutional, that ends count one and there's no occasion to go to damages. To respond to the inquiry of Judge Sykes, I think it's Memphis v. Stachura, the U.S. Supreme Court case, which is probably 30 years old, holds that you follow ordinary tort principles if we ever got to a damage thing and there's no damages here. Applying normal tort principles to a group of citizens. Again, for the petition plaintiffs. So now can I just go back to Jones because I struggled in his part of this case to find any kind of rational basis for boxing him in and singling him out the way these referenda did and whether you say something done out of pure animus is by definition something without a rational basis or whether you tease out rational basis in animus. I'm not sure it's necessary to take sides on the various theories in Del Mar Cell. Why doesn't Jones satisfy the pleading requirements? We're not further along in this case, but the pleading requirements for class of one. For several reasons, Your Honor. First, it is undisputed in the record that the Jones referendum had an immediate applicability not only to Mr. Jones, but to two other incumbent aldermen, preventing them to run for mayor. But he wasn't, but the other two people weren't running for mayor. It was really, it looked to me, especially since this referendum process, I gather, in the history of Calumet City had been more or less moribund until this political dispute arose between Mr. Jones and Ms. Qualkenbush. The legal answer, I believe, to that question is by application of the rational basis standard. And I should note that since our briefing, this court with two members of this panel decided a case called Monarch Beverage, which holds it if you've got a class of one claim, but it's based on a law or ordinance itself as opposed to the normal administrative stuff where one individual is being horsed around with, you look at the law itself to determine the rationality of the classification. But you can do that with the law itself. And some laws apply to a class of one and they're constitutional. The Illinois legislature has a habit of passing laws that are in Illinois with populations of more than 500,000, which is, in fact, Chicago. It's a long-winded way of saying Chicago. And so I'm not even saying that if it is one person, it is or is not valid. But this happens in legislation and I believe Mr. Jones' argument is that that's exactly what happened to him. They figured out exactly what it would take to ban him from running as Ms. Falkenbush's opponent and they got those referenda on the ballot. As I understand rational basis test, what the court looks to is not the motives of the individual legislators who adopted the measure. It's whether a reasonable legislature could conclude that this was a reasonable means of dealing with the problem. Right. And so could a reasonable legislature conclude that Thaddeus Jones should not be able to run for mayor against Michelle Markowitz Falkenbush? I mean, that's the question. Yes, except a reasonable legislature now has passed or has had had this question given to the voters and the voters have decided to make this not only effective to Mr. Jones, but also to make it effective to all long-term incumbents in Calumet City going forward. But they were never asked the question that he wanted them to answer, which is if they like term limits that much, maybe they'd like a three-term limit, not a four-term limit. And that field is wide open to future petitioners. There's nothing to prevent a group of petitioners to circulate a new petition saying we want it to be a two-term limit or we want no term limit. In effect, Your Honor, we're dealing with direct democracy versus indirect democracy. Indirect is legislation. Direct is referendum. There is nothing to prevent a group of petitioners to put on the ballot a question eliminating what was passed altogether, modifying it, or trumping it in some other way. So you don't think there's any limit on direct democracy? They could have put a referendum on the ballot saying we don't want Thaddeus Jones ever to run for office again in Calumet City? Yes, because... Surely that's not permissible. No, that would be targeted at an individual, not of general applicability. Right, and so that's why I'm wondering, reading the complaint in the light that we're required to read complaints, hasn't he alleged that what happened to him was the equivalent of that? No, because of the nature of the question itself. The effect of it is to bar, generally speaking, all long-term incumbents in Calumet City going forward from running for mayor. That is a policy choice that the electorate is entitled to make, no different than, as we mentioned in our opening, in our brief, there's only one reason the Illinois Constitution was amended to allow for recall of sitting governors. Everybody was sick of Blagojevich, but that doesn't make the constitutional amendment run afoul of the federal constitution. Is it rational for the voters to have a recall mechanism for the governor? And given the extremely high hurdle a plaintiff has to climb in that situation, the answer is yes, it's rational. The cases that we cite are primarily state court cases. It's very unusual. Very few cases I noticed that had federal constitutional review of these questions. Why? It's primarily a matter of state policy. I should mention, as a housekeeping matter, Mr. Jones has challenged the referendum in state court. He lost in state court for pretty much the same reasons that Your Honor is inquiring about, the rational basis. It's on appeal. The briefing was just completed. Well, thank you for letting us know. So that will await the Illinois Appellate Court. I see my time is up. Are there any more questions? I see none, so thank you very much. Thank you for your time. Anything further, Ms. Kraftheffer? Just briefly. I would just like to follow up on three things. The first thing would be some of the issues related to the pinpointing of Jones. The second, follow up on the issue of nominal damages. And then third, I wanted to also address the issue with respect to the holdings cause and why it's not an effective relief in this instance. First of all, it's exactly correct the questions that you were just asking counsel about is it proper to target Mr. Jones in this fashion. The three referenda on the ballot, the one related to the very narrow pinpointed term limits, the one related to the ability to collect both an Illinois Municipal Retirement Fund pension and a General Assembly pension at the same time, and the third question with respect to shall an elected city official be able to hold a second compensated office at the same time, were so narrowly tailored to him that we satisfied the requirements to establish the equal protection claims. Second, with respect to nominal damages, nominal damages are enough to keep a case alive. And merely the fact that it may be very difficult to determine what the nominal damages are does not mean in itself that that should bar a case from going to a trial of fact to determine that. And finally, with respect to the holdover clause, it is not true that section 28-5 just says, well, you go to the next election. It says the next available election, and there's nothing in that rule that says you cannot twice block, a government can't block twice the same petitioners from putting a subsequent question on the next ballot. So in addition- Does the concerned citizens group have a present intention to do another petitions drive and try to get ballot access for this same referendum? Not for this same referendum, because this was a time-specific referendum that was trying to- Well, right, but without the time-specific, I'm talking about a term limit- I don't know whether- Referendum more to their liking. Yeah, I don't know if they will try to pursue that in the future, but the mere fact that they were not able to get the relief at the November election, which would have had a far greater voter turnout than the next primary election would have had, that demonstrates the very flaw in the Rule of Three as applied in this instance, which is why we should prevail in this matter. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.